# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMES MILLER,

      Plaintiff,

  v.                                                                            Case No. 17-CV-638

NANCY A. BERRYHILL,
   *Deputy Commissioner of Operations,*
   *Social Security Administration,*

      Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

James Miller alleges disability based on a back impairment and substance-use disorder. After the Social Security Administration denied his application for disability benefits, Mr. Miller requested and received a hearing before an administrative law judge. The ALJ determined that Mr. Miller remained capable of working notwithstanding his impairments. Mr. Miller now seeks judicial review of that decision.

Mr. Miller argues that the ALJ erred in evaluating whether he is presumptively disabled, assessing his residual functional capacity, and weighing the opinion of a medical expert. The Commissioner contends that substantial evidence supports the ALJ's decision. Because the ALJ's decision is not supported by substantial evidence, his decision denying Mr. Miller disability benefits will be reversed and this matter will be remanded for further proceedings.

I.  **Background**

James Miller was born in Indiana on June 23, 1970. Transcript 321–23, ECF Nos. 13-2–13-11. He moved to Milwaukee with his family at age five. Mr. Miller took special-education classes throughout all his schooling, and he was frequently truant. In eleventh grade, Mr. Miller got kicked out of school for hitting his principal. He married his high-school girlfriend in 2008, but the couple separated two years later. Since then, Mr. Miller has lived on-and-off with family or friends. Tr. 55–56. He has never had a permanent, full-time job. Tr. 323.

In August 2012, Mr. Miller filed an application for supplemental security income, alleging that he became disabled on February 1, 2012. Tr. 159–84. Mr. Miller asserted that he was unable to work due to neck problems, carpal tunnel syndrome, and pain all over the left side of his body. Tr. 179. After the Social Security Administration (SSA) denied his application initially, Tr. 69–83, 101–04, and upon reconsideration, Tr. 84–100, 106–09, Mr. Miller requested and received a hearing before an administrative law judge, Tr. 112–58. Mr. Miller was represented by counsel at the March 10, 2016 hearing; the ALJ heard testimony from Mr. Miller, a medical expert (Harold Milstein, M.D.), and a vocational expert (Sara Elizabeth Gibson). *See* Tr. 52–68.

Two weeks later, the ALJ issued a decision unfavorable to Mr. Miller. *See* Tr. 25–50. The ALJ determined that Mr. Miller did not engage in substantial gainful activity since his application date; Mr. Miller suffered from two "severe" impairments: a vertebrogenic impairment and substance abuse; if Mr. Miller

stopped the substance abuse, he would not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; if Mr. Miller stopped the substance abuse, he would have the residual functional capacity to perform sedentary work with a ten-pound lifting restriction; Mr. Miller did not have any past relevant work; and if Mr. Miller stopped the substance abuse, he would be capable of performing the requirements of various unskilled, sedentary occupations. *See* Tr. 28–45. Based on those findings, the ALJ concluded that Mr. Miller was not disabled.

Thereafter, the Appeals Council denied Mr. Miller's request for review, Tr. 1–6, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Mr. Miller filed this action on May 3, 2017, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). Complaint, ECF No. 1. The matter was reassigned to this Court after the parties consented to magistrate judge jurisdiction. *See* Order, ECF No. 7; *see also* Consent to Proceed Before a Magistrate Judge, ECF Nos. 4, 6 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). It is now fully briefed and ready for disposition. *See* Plaintiff's Brief in Support of Reversal, ECF No. 14; Defendant's Memorandum in Support of the Commissioner's Decision, ECF No. 18; Plaintiff's Reply Brief in Support of Reversal, ECF No. 19.

## II.  Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011)

(citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

In reviewing the record, this Court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) and *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion,"

4

*Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569). Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121 (citations omitted).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

### III. Discussion

Mr. Miller maintains that he is disabled and therefore entitled to disability benefits under the Social Security Act; alternatively, he seeks remand to the Commissioner for further administrative proceedings. *See* Compl.

#### A. Legal framework

Under the Social Security Act, a person is "disabled" only if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). The disability must be sufficiently

severe that the claimant cannot return to his prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since his alleged onset of disability; (2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the SSA regulations as presumptively disabling; (4) whether the claimant's RFC leaves him unable to perform the requirements of his past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe*, 425 F.3d at 352. "The claimant bears the burden of proof at steps one through four." *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

**B. Legal analysis**

Mr. Miller argues that the ALJ erred in evaluating the severity of his spine impairment at step three, assessing his RFC, and rejecting the opinions of Dr. Milstein.

> **1. Whether the ALJ erred in evaluating the severity of Mr. Miller's spine impairment**

A claimant is presumptively disabled if he has an impairment or combination of impairments of a severity that meets or medically equals the requirements of any listed section or any part of the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (i.e., the listings). § 416.920(a)(4)(iii) and (d). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297 F.3d 589, 595–96 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). A claimant meets or medically equals Listing 1.04, disorders of the spine, if he has a spinal disorder resulting in compromise of a nerve root or the spinal cord with (1) evidence of nerve root compression, (2) spinal arachnoiditis, or (3) lumbar spinal stenosis resulting in pseudoclaudication. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

The ALJ here determined that Mr. Miller's back issues did not satisfy the requirements of Listing 1.04. According to the ALJ, "[t]he record shows that [Mr. Miller] is able to use both his right and left upper extremities effectively and is able

7

to ambulate effectively." Tr. 36. The ALJ also found that "[t]here is no evidence of a disorder of the spine resulting in a compromise of a nerve root with evidence of nerve root compression, spinal arachnoiditis, confirmed by an operative note or pathology report, or lumbar spinal stenosis resulting in pseudoclaudi[c]ation." Tr. 36–37.

The ALJ's finding that Mr. Miller's back impairment does not meet or medically equal Listing 1.04 is not supported by substantial evidence. For one, the ALJ did not cite any evidence to support this finding. Thus, his analysis is so perfunctory as to preclude any meaningful judicial review. *See, e.g., Kastner v. Astrue*, 697 F.3d 642, 646–48 (7th Cir. 2012) (reversing decision where ALJ failed to build accurate and logical bridge between the medical evidence and his step-three finding); *Scott*, 297 F.3d at 595–96 (same).

Moreover, contrary to the ALJ's conclusion, the record does contain evidence that Mr. Miller's spine disorder resulted in nerve root compression. An MRI from October 2012 revealed "moderate to severe left neural foraminal stenosis with suggestion of compressive neuropathy" at C4-5 and "moderate left neural foraminal stenosis with suggestion of compressive neuropathy" at C5-6. Tr. 366. Similarly, an MRI from March 2014 revealed "a large left-sided disc herniation which gives rise to significant encroachment on the left C6 nerve root." Tr. 448. The ALJ did discuss these MRIs later in his opinion but, without explanation, he left out the compression and encroachment findings. *See* Tr. 40 (citing Tr. 366–67), 41 (citing Tr. 448–49).

8

Nevertheless, the Court is unable to conclusively find that Mr. Miller's back impairment satisfies all the requirements of Listing 1.04. At step three, the ALJ did not discuss the other requirements of subsection A. *See* Tr. 36–37. Likewise, the medical expert who testified at the administrative hearing referenced only the disc bulging and herniation seen on the 2014 MRI and testified without any explanation that Mr. Miller's impairments did not meet or equal any listing. *See* Tr. 64. It is therefore unclear whether 1.04's other requirements are supported by the record. This factual issue can only be resolved by remanding the matter to the ALJ.

### 2. Whether the ALJ erred in assessing Mr. Miller's RFC

Between steps three and four of the sequential evaluation process, the ALJ must determine the claimant's RFC—that is, the most he can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a)(1); *see also* Social Security Ruling No. 96-8p, 1996 SSR LEXIS 5, at *5 (July 2, 1996). ALJs must assess a claimant's RFC "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements.'" SSR No. 96-8p, 1996 SSR LEXIS 5, at *5–6; § 416.945(a)(3). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR No. 96-8p, 1996 SSR LEXIS 5, at *19. "The [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

9

The ALJ determined that, if Mr. Miller stopped the substance abuse, he would have the RFC to perform sedentary work with a ten-pound lift-and-carry restriction. Tr. 38. That RFC, according to the ALJ, is supported by the objective medical evidence, Mr. Miller's daily activities, and the medical expert's opinion. *See* Tr. 38–43. Mr. Miller argues that the ALJ's RFC assessment is not supported by substantial evidence because it fails to include upper-extremity limitations or limitations regarding neck range of motion. *See* Pl.'s Br. 15–18; Pl.'s Reply 2–5. According to Mr. Miller, this error was material because a person with such limitations would not be able to work.

Given the incomplete consideration of the MRIs, the Court will direct the ALJ to reexamine Mr. Miller's RFC on remand. In fashioning Mr. Miller's RFC, the ALJ discussed numerous findings that suggest Mr. Miller had upper-extremity limitations. Mr. Miller reported dropping objects and frequently complained about experiencing pain, numbness, tingling, and weakness in his left upper extremity. *See, e.g.*, Tr. 258, 276, 359, 361, 363, 374–75, 381, 385, 391, 396, 435, 440, 446, 450, 457, 460, 517, 574, 580, 587, 593. Upon examination, Mr. Miller often demonstrated tenderness, decreased sensation, slightly diminished strength and power, hyporeflexia, and moderately reduced range of motion in his left upper extremity. *See, e.g.*, Tr. 260, 270, 276, 308, 312, 347, 349, 359, 361, 363, 375, 382–83, 386, 391, 397, 436, 440, 446, 458, 461, 507–08, 519, 575, 581, 588, 594–95. And imaging studies—which revealed degenerative changes, osteophytes, disc bulging, herniations, moderate neural foraminal stenosis with suggestion of compressive

neuropathy, and significant encroachment—seemed to confirm these signs and symptoms. *See* Tr. 365–66, 448.

The opinion evidence in the record also bolsters Mr. Miller's purported upper-extremity limitations. Dr. Milstein testified at the administrative hearing that Mr. Miller's spine disorder would make it very difficult for him to use his arms and hands. Tr. 64. He further testified that Mr. Miller's ability to manipulate with his fingers would be markedly limited due to pain. Tr. 64–65. The ALJ, however, assigned no weight to these opinions because he believed they were not supported by the objective medical record. *See* Tr. 43. According to the ALJ, the record "does not show significant limitations in grip strength or dexterity." Tr. 43. That reason may be sufficient for rejecting the finger and hand limitations, but it does not address the limitation on arm use. As described above, Mr. Miller's symptoms, physical exams, and clinical findings all show deficits in his left shoulder and neck area. Thus, the weight the ALJ afforded to Dr. Milstein's opinions is not supported by substantial evidence.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the ALJ erred when evaluating the severity of Mr. Miller's back impairment and assessing Mr. Miller's RFC. Based on this record, however, the Court cannot determine whether Mr. Miller was disabled as of February 2012. Accordingly, the Court concludes that it is necessary to remand this matter to the Commissioner for reconsideration of the ALJ's step-three and step-five findings.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED**.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of August, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge